## CENTRAL BANK *vs.* FREDERICK CURTIS AND ANOTHER.

A having failed and being unable to pay his debts, made an arrangement with V, who was one of his principal creditors, under which he was to put a considerable amount of property belonging to him into the hands of V, who was to assume to be the owner of it, and with it purchase the debts, on the best terms that he should be able, for A's benefit; and in consideration of the service, V was to be paid the whole amount of his claim. At this time certain other property of A had been attached by C on a large claim against him as endorser of sundry notes. The property was placed in the hands of V, as proposed, and soon after an arrangement was made by V with C, under which C was to receive certain of the property in V's hands in full of his claim, and to transfer to V the notes in suit, with the benefit of the attachment. C accordingly delivered the notes to V, already endorsed in blank by A, but without further endorsement, and executed a power of attorney authorizing V, in the name of C, to prosecute the suit on the notes to final judgment for his own benefit and at his own cost, and describing the notes as sold and transferred to V. This arrangement was made with the concurrence of A, who agreed that the notes should be held by V as security for the payment of his claim and that the suit should proceed to judgment for his benefit. About three months afterwards A made an assignment for the benefit of his creditors under the insolvent laws of the state. Subsequently A, in concurrence with the assignee in insolvency, made defence to the suit, on the ground that, by the transfer of the notes, the legal title had passed from the plaintiff C, and the suit therefore could be no longer maintained. Held, 1. That A was estopped by his agreement that the suit should be continued for the benefit of V, from setting up the want of legal title in the plaintiff. 2. That the indebtedness of A to V was a sufficient consideration for this agreement. 3. That the assignee in insolvency had no rights which he could assert in the case, the transfer of the notes having been

made more than sixty days before the assignment and therefore not invalidated by any of the provisions of the insolvent act, and the court not being able to infer from the facts that the arrangement was a fraud upon creditors.

Whether the effect of the assignment of the notes, in the circumstances, was to transfer the legal title, or only an equitable one: *Qu.*

THIS was an action of assumpsit brought against the defendants as endorsers of twenty-one promissory notes and acceptances, amounting in all to about $24,000, which had been discounted for the defendants by the plaintiffs. The case was tried on an issue closed to the court, with notice of the following special matters of defence. 1st. An accord and satisfaction. 2d. That during the pendency of the suit the notes had been negotiated by the plaintiffs to one Joseph A. Veazie, who then held the same and was prosecuting the suit for his own benefit. 3d. That the notes were held by said Veazie only as collateral security for a claim on the defendants, which amounted to only $5,000, and that if any recovery should be had it should be for only that amount.

The court made a special finding embracing the following facts :

The notes and bills were endorsed by the defendants in blank. They were all protested for non-payment and notice duly given to the defendants. The suit was commenced by writ of attachment, which was, on the twenty-third day of August, 1855, levied on twenty-four hundred and fifteen shares of the capital stock of the Curtisville Manufacturing Company, a joint stock corporation, as the property of the defendants.

Before and at the time of the commencement of the suit, the defendants, who were partners under the name of F. Curtis & Co., were largely indebted to Joseph A. Veazie, of Boston, and to sundry other persons, and were in embarrassed circumstances, and with a view to a settlement with their creditors upon favorable terms to themselves, an arrangement was entered into between them and Veazie, under which sundry parcels of real estate were conveyed to him by the defendants or by their procurement, to be used in the settlement or purchase of their debts,—it being understood

between the defendants and Veazie that he should assume and appear to be the owner of the property, and assist the defendants in making the contemplated purchase or settlement of their debts upon favorable terms to the defendants, and in consideration of his services in that behalf should be paid his own debt in full. And in contemplation of and with reference to the arrangement with the Central Bank hereafter mentioned, the defendants, before the 20th day of October, 1855, had also placed in the hands of Veazie the sum of $2,560 in money, to be paid over to the bank upon the final conclusion of the arrangement.

On the 20th day of October, 1855, an arrangement was finally concluded between the bank, the defendants, and Veazie, in pursuance of which the bank, without endorsing, transferred and delivered over all the bills and notes upon which the suit had been brought, to Veazie, and in consideration thereof received from him the title to the real estate which had been conveyed to him and the money placed in his hands by the defendants ; and at the same time and as part of the same transaction, the bank executed and delivered to Veazie the following power of attorney.

" Know all men by these presents, that the president, directors and company of the Central Bank, a corporation established by the laws of the state of Connecticut, having its place of business at Middletown in said state, having sold, transferred, and assigned to Joseph A. Veazie, of the city of Boston, certain notes and demands described in the schedule hereto annexed, on which suits have been brought by said bank, have constituted, ordained, and made, and in its stead and place put, and by these presents doth constitute, ordain, and make, and in its stead and place put, the said Joseph A. Veazie, to be its true, sufficient, and lawful attorney, for it and in its name and stead to hold, manage, and dispose of said paper, notes, and demands, and to prosecute any and all suits at law, commenced by said bank for the collection of said demands, and to do any and all other acts in the name of said bank necessary or proper for the collection of said notes, or demands, or any of them, for his own

use and benefit, he saving the said bank harmless from all cost and expense hereafter arising in said suits or made by him; and in like manner to bring suits in the name of said bank, but at his own cost and expense, for the purpose of collecting said demands or any of them, giving and hereby granting unto its said attorney full power and authority in and about the premises; and to use all due means, course and process in law for the full, effectual, and complete execution of the business afore described; and in its name to make and execute due acquittance and discharge; and for the premises to appear, and said bank to represent, before any governor, judges, justices, officers, and ministers of the law, whatsoever, in any court or courts of judicature, and there, on its behalf, to answer, defend, and reply unto all actions, causes, matters and things whatsoever relating to the premises; also to submit any matter in dispute respecting the premises to arbitration or otherwise, with full power to make and substitute for the purposes aforesaid, one or more attorneys under him said attorney, and the same again at pleasure revoke; and generally to say, do, act, transact, determine, accomplish and finish all matters and things whatsoever, relating to the premises as fully, amply, and effectually, to all intents and purposes, as it, the said constituent, if present, ought or might personally, although the matter should require more special authority than is herein comprised, the said constituent ratifying, allowing, and holding firm and valid all and whatsoever its said attorney or his substitutes shall lawfully do or cause to be done in and about the premises by virtue of these presents.

"In witness whereof the said corporation has hereunto set its hand and seal this 20th day of October, A. D. 1855, by its president for that purpose duly authorized. For the Central Bank, Edwin Stearns, President. [L. S.]"

It was at the time understood and agreed by all the parties that the suit was not to be discontinued, and that Veazie should hold the notes and bills as security for his claim against the defendants; and for the same purpose, and with the same intent, should prosecute the suit to final judgment,

in order to make the attachment of the Curtisville stock available as security for the payment of his claim; and Veazie now prosecutes the suit pursuant to that agreement and understanding.

On the 28th of January, 1856, the defendants made an assignment of their property, under the act for the relief of insolvent debtors, to Erastus Smith, Esq., who as such assignee was defending the suit. Commissioners on the assigned estate of the defendants had been appointed, and Veazie had exhibited to them as a claim in his favor against the estate, all the bills and notes, and the question whethe the claim should be allowed or not was then pending before the commissioners undecided. Veazie's claim against the defendants had not been paid, and was found by the court to amount at the time of the trial to $9,152. The plaintiffs conceded that they could recover only the amount of that indebtedness.

Upon these facts the case was reserved for the advice of this court.

*Dutton* and *Tyler*, for the plaintiffs.

1. The objection that the plaintiffs have parted with the legal title to the bills and notes can not prevail, because,—1st The court only finds that the Central Bank transferred the bills and notes to Veazie, and leaves the question as to the kind of transfer, to be inferred from the accompanying instrument and the circumstances. 2nd. The so called power of attorney treats the legal title as still remaining in the Central Bank. There would be no propriety in giving a man a power of attorney to collect his own bills and notes. The expressions in the instrument clearly imply that the legal title was to remain in the bank. 3d. In this respect this case is clearly distinguishable from the case of *Lee* v. *Jilson*, 9 Conn., 94, and from that of *Curtis* v. *Bemis*, 26 Conn., 1. In the first of these cases the decision proceeds upon the ground that the note had been assigned by indorsement. In the other the court finds expressly that the note had been assigned. There was no room for construction.

4th. In this case the bills and notes were not endorsed by the Central Bank. Consequently the question is left open as to what the character of the transaction was. 5th. The court finds that it was the intention of all the parties, including the defendants, that the security by attachment should be preserved. This object would be defeated, by construing this as an assignment of the legal title.

2. The trustees can make no defence here which Curtis & Co. could not make. The trustee at most could make only such defence as a creditor could make by defending under the statute on the subject. The attachment of the Central Bank was beyond the operation of the assignment. It would make no difference with the creditors whether the Central Bank collected the money or Veazie.

3. Curtis & Co. are estopped from setting up this defence. The ground on which Veazie parted with the land and money which were in his hands, and which he had a right to hold as security for his debt against Curtis & Co., was that the Central Bank agreed that he should retain and prosecute the suit in the name of the bank. It would be a fraud in Curtis & Co. to violate this agreement, by taking advantage of a legal defect in Veazie's title, if there was one. *Roe* v. *Jerome*, 18 Conn., 138.

*Hooker* and *Cornwall,* for the defendants.

1. The claim is paid and satisfied. The payment was in part by the defendants personally and in part by Veazie as their agent. It was all paid with their funds provided for the purpose. It is the same precisely as if the whole was paid by themselves, with no intervention of Veazie. This necessarily extinguishes the debt. There is no such thing as a debtor paying a debt himself, with his own funds, and yet having the debt continue in existence. The transfer to Veazie stands precisely as it would if the notes had been paid and actually taken up by the defendants, and then some days after, (the suit happening not to be withdrawn,) had been delivered over to Veazie to get judgment on. The notes being extinguished can not thus be revived.

2. The suit is clearly barred by the sale of the notes to Veazie, unless the agreement of the defendants prevents. *Lee* v. *Jilson*, 9 Conn., 94. *Curtis* v. *Bemis*, 26 Conn., 1. The latter case covers the present in every respect. The power of attorney expressly refers to the sale as already made. It also gives the power to bring other suits afterwards in the name of the bank. Suppose no suit had been pending; can it for a moment be claimed that a suit could now be brought in the name of the Central Bank? Yet if the power of attorney qualifies the sale, so as to make it an equitable, not a legal transfer, the notes remain and are legally the bank's, and a new suit can be brought in its name, and if a suit were now brought in the name of Veazie on the notes, it could be defeated on the ground that the legal title is still in the bank.

3. What is the effect of the assent of the defendants to the sale of the notes? Clearly it has no effect, unless it amounts to an agreement that the suit should go on as before. And if it amounts to this, then it must operate either as a direct agreement, binding upon the defendants as such and which they can not repudiate and to which the court will give effect as such, or by estopping them from setting up the matter in defence. Let us examine both these points; 1st. As an agreement. To be binding in this respect it needs a consideration, and there is none. There was no agreement to forbear suit. Veazie might have sued on his original claim the next hour. There was not even an implied agreement that he should forbear. The expenses incurred by Veazie in the prosecution of the suit can not be a consideration, otherwise they would always make a valid consideration in every suit on a *nudum pactum*. The obligation to pay Veazie in full is no consideration. This obligation was just as complete before the promise as after, and was no ( greater than that to pay every other creditor in full. The property made over to the bank by Veazie constitutes no consideration, as Veazie had no interest in it, holding and transferring it merely as agent of the defendants. Veazie gave up nothing. He stands just where any creditor would,

in whose hands the debtor should place security of which he afterwards disputes the validity. 2d. As an estoppel. But it wants a most important element of estoppel,—namely, that Veazie on the representation of the defendants that the suit might go on, had changed his position for the worse. This is indispensable. *Roe* v. *Jerome*, 18 Conn., 138. But Veazie gave up nothing—did nothing. He stood. the next hour, in all his relations to Curtis as a debtor, just where he stood before. There must have been on his part an inconvenience sustained that would make a valid consideration for a promise, and it is believed that it may be laid down as a general principle, that, to estop a party by his representations, there must be such inconvenience caused to the other party as would have made a valid consideration for a contract, if the party had chosen to treat the representation as a promise instead of a mere representation.

4. The assignee is not affected by this agreement, even if the defendants are. The assignee represents the creditors. He takes the property as if he had attached it. *Minor* v. *Mead*, 3 Conn., 289, 294. *Swift* v. *Thompson*, 9. id., 63, 69. It is only through him that the creditors can attack a fraudulent conveyance of the property, as the title is vested in him for the benefit of the creditors. The defendants were endeavoring to cover up the property from their creditors. It was in effect an attempt to transfer the stock to Veazie to secure his debt. It was done thus indirectly, lest creditors should know of the transaction and set it aside. If it had been done directly it could have been set aside within sixty days, as the defendants had failed and were utterly insolvent. They actually assigned a little over sixty days afterwards. The whole was an attempt to evade the insolvent law. If it was a mere attempt fraudulently to transfer the stock to Veazie, then as the whole transaction was directed to this end, the agreement of the defendants certainly ought not to bind their assignee.

HINMAN, J. The question which has been principally discussed in this case is, whether by the instrument dated the

20th of October, 1855, the plaintiffs so far parted with their legal title to the claims in suit that they can not now maintain the action. It was obviously the intention of the parties that the suit should not be affected by that transaction; because the instrument, after stating that suits had been brought on the notes and demands sold and transferred to Joseph A. Veazie, goes on to constitute Veazie the attorney of the bank, and to provide that " in its name and stead he shall hold, manage and dispose of said paper, notes and demands," with power " to prosecute any and all suits at law commenced by said bank for the collection of said demands, and to do any and all other acts, in the name of said bank, necessary or proper for the collection of said notes or demands, or any of them, for his own use and benefit." And as the notes and bills were not indorsed by the bank, or in any way assigned except by the instrument referred to, they undoubtedly supposed that the legal title was not transferred in such a manner as to prevent the action from proceeding to final judgment, notwithstanding the cases of *Lee* v. *Jilson*, 9 Conn., 94, and *Curtis* v. *Bemis*, 26 id., 1. Still, had not the defendants been parties to the arrangement by which this transfer, as it is called, was effected, we might have had difficulty on this point; but from the facts found by the court we do not think this question is involved in the case. The instrument which has been referred to was made pursuant to an arrangement to which the bank and the defendants and Veazie were all parties, and it was then and there understood and agreed by and between them all, that the suit in favor of the bank was not to be discontinued, and that Veazie should hold the notes and bills as security for his debt against the defendants, and for the same purpose should prosecute this suit to final judgment, in order to make the attachment available as security for the payment of his debt; and he now prosecutes the suit under this arrangement. Now, after the defendants have been parties to such a contract, we think they are not in a situation to take advantage of any want of title in the plaintiffs, of which if the plaintiffs have divested themselves, it has been done at the solicit-

ation of the defendants themselves, and was induced by an agreement substantially that they would not take any such advantage of the fact as they are now attempting. The injustice of the course which the defendants are now pursuing is quite apparent. They are attempting to take advantage of the technical difficulty arising from the plaintiff's want of title to the claims in suit, and in this way defeat one of the main objects of a contract to which they were parties, and which was entered into at their solicitation.

But the defendants contend that, as between themselves and Veazie, there was no consideration for the agreement, and therefore it is void as a contract, and can not operate as an estoppel, because Veazie is in no worse condition now than he would have been in if the arrangement had not been made. It is true that the property and money with which Veazie was enabled to satisfy the bank, and procure for his own benefit the notes and bills in suit, belonged to the defendants, and was furnished by them to be used in the purchase by Veazie of the defendants' debts. But as Veazie was a large creditor of the defendants, he took upon himself the agency of purchasing up the defendants' debts on such favorable terms as he could procure them, with a view to the security and eventual payment of his own debt; and this property was placed in his hands to be used for this purpose. He was willing to perform this service in the expectation of procuring full payment of his own debt; and the defendants were desirous of obtaining the benefit of his services if he could be induced to render them under this expectation. When therefore he gave up the property in his hands in order to settle with the bank, he had a right to obtain such further security for his own debt as the defendants were willing to make him. His own debt might not have been any better secured by a mere promise to pay it. But it was consideration enough for any additional security he could obtain for it, just as it was a good consideration for payment of it, if the defendants had been willing to make payment. This arrangement between the bank and the defendants and Veazie was more than sixty days previous to the assignment

Central Bank *v.* Curtis.

by the defendants for the benefit of their creditors generally, and the attachment by the bank, being then of long standing, was not affected by that assignment. What objection then could there be, if the defendants had directly transferred the property attached to Veazie, in payment of his debt, on the extinguishment of the attachment? And if this could have been done, it seems clear that the same object might be accomplished by any lawful contract which the parties chose to make for that purpose. And as there was no objection at the time, growing out of the general assignment of the defendants for the benefit of their creditors, we do not see why the arrangement should not be carried into effect. Its object was to make the property attached by the bank available for the payment of Veazie's debt, and thus carry out the defendants' promise to pay Veazie in full. It may be true that the promise to do this was invalid, but, if so, it is because the defendants were, at the time, under as strong an obligation to pay the debt as the new promise secured to Veazie, and the arrangement to carry it into effect, therefore, was nothing more than an arrangement to pay an acknowledged debt. What reason the parties might have had for resorting to this circuitous mode of payment, rather than to apply the value of the property to the debt itself, we do not know, nor is it material. As there was nothing illegal in it, we think the defendants now ought not to object to its being carried out.

But it is insisted that the assignee for the benefit of creditors is not affected by the defendants' agreement. The assignment for the benefit of creditors generally, was made on the 28th of January, 1856, more than three months after this contract between the defendants and Veazie, and the attachment by the bank was long before that; and as attachments of more than sixty days standing are not affected by an assignment, we do not see that the general assignee is in any better condition than the defendants themselves. It was suggested that the object of the parties was to cover up the property from Curtis & Co.'s creditors, but we do not think there is any evidence on which the

court can find this fact. Upon the whole case therefore, we advise the superior court to render judgment for the plaintiffs.

In this opinion the other judges concurred.

Judgment advised for plaintiffs.